IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF OREGON

BILLY WAYNE HATCH,

    Petitioner,

v.

ROBERT LAMPERT,

    Respondent.

Case No. 02-647-HO

ORDER

Petitioner brings this proceeding for habeas corpus relief pursuant to 28 U.S.C. § 2254 challenging his convictions for unlawful sexual penetration and sexual abuse.

At the beginning of petitioner's trial, the court conducted a competency hearing and determined that the four-year old alleged victim was competent to testify, to which petitioner's counsel objected.

The state presented three witnesses in it case in chief: the child's mother; the child, and a male who lived with them. The state

1 - ORDER

also called two rebuttal witnesses. Petitioner testified in his own behalf and called three witnesses as well. A jury convicted petitioner on both counts and the court sentenced petitioner to 130 months.

On appeal, petitioner raised one assignment of error: that the trial court erred when it excluded evidence that he had accepted an offer to take a polygraph arguing that the jury was left to speculate about it and most likely concluded that he refused, damaging his credibility.[1] The Oregon Court of Appeals affirmed without opinion and the Oregon Supreme Court denied review.

Petitioner filed a pro se petition for post-conviction relief in state court rasing four claims:

1. That his attorney failed to object to the indication that the child's testimony was not her own, but was based on coaching from her mother;

2. That his attorney failed to introduce the medical report and call Dr. Pliskin, the examining physician, after promising the jury in opening statements that he would;

3. That his attorney failed to cross-examine witnesses on their degree of intoxication and ability to form accurate perceptions on the evening of the alleged crimes; and

---

[1] Petitioner did not seek to introduce the fact that he passed the polygraph, but only that, in response to the offer of the police to submit to a polygraph, he agreed. Petitioner sought to introduce this evidence because a state witness testified that the test was offered.

2 - ORDER

4. That his attorney failed to properly question Officer Schulte, allowing Schulte to testify about offering the polygraph.

The state post-conviction court concluded that trial counsel was effective because the medical report cut both ways and counsel used it as being a weakness of the state's case because they failed to produce it. The court also found that the polygraph was not admissible and counsel effectively handled the reference to it so as to avoid drawing attention to the statement of the officer. The court also concluded that "there is nothing of substance in any of the 'tipsy' potential witnesses that could add anything to this record, at least of benefit to the petitioner, and, as has been pointed out, that was not a particular of petitioner's allegations in this case." Ex. 116 at pp. 33-34 (#34).

Petitioner appealed, raising eight grounds of ineffective assistance, alleging his attorney failed to challenge the competency of the four-year old victim, pursue the mother's manipulation of the victim, pursue the victim's change of story, offer the medical report, call medical witnesses, interview and call integral witnesses, and move for a mistrial or defuse the prejudicial statements of Schulte. Petitioner also alleged the cumulative effect of trial counsel's errors resulted in ineffective assistance. The Oregon Court of Appeals affirmed without opinion and the Oregon Supreme Court denied review.

The state put on evidence of the facts as follows:

3 - ORDER

On January 21, 1996, the alleged victim's mother, April Egner, had a social gathering in which the guests were drinking and had a "pretty good buzz." Egner put the child to bed and was downstairs cooking when she suddenly heard the child call for her. When Egner walked into the room, she saw petitioner in bed with the child under the covers. At that point petitioner jumped out of the bed and Egner asked the child if he had touched her. The child replied yes and petitioner then pushed his way past Egner and fled. When the child was examined by Dr. Pliskin she was quite explicit that a male did touch her labial area with his finger. The child testified that petitioner touched her inside her private area.

Petitioner testified and admitted that he had been previously convicted of Rape in the Third Degree, Unlawful use of a motor vehicle, and Assault in the Third Degree. Petitioner denied he touched the child. Rather, he stated that he only took her upstairs to bed to tuck her in as the child had come downstairs complaining of the noise and her mother did not respond.

In his section 2254 motion, petitioner initially raised seven grounds for relief. Petition (#2). After obtaining counsel, petitioner filed an amended petition (#57) raising two grounds for relief:

1. The trial court violated petitioner's right to due process when, after the state's witness testified that petitioner had been offered a polygraph examination, the court excluded evidence offered by the defense that petitioner had agreed to take the polygraph;

2. Trial counsel provided ineffective assistance when he failed to investigate available evidence and use it to present a credible defense at trial by:

    a. failing to investigate, prepare, and present a defense;

    b. failing to effectively cross-examine the alleged victim;

    c. failing to call the examining physician or to introduce an available medical report that cast doubt on an essential element of the charges and support the defense;

    d. failing to move for a mistrial after the state's witness disclosed that petitioner had been offered a polygraph.

The state contends that petitioner procedurally defaulted ground one and ground 2(a) and that the state court decision denying relief is entitled to deference.

### A. Procedural Default

Section 2254(a) allows federal courts to entertain an application for habeas relief by a state prisoner only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.

Among the obstacles a federal habeas corpus petitioner must face

are the distinct doctrines of "exhaustion of state remedies" and "procedural default". Although not always clearly distinguished, these doctrines are independent of each other, and require separate analysis.

28 U.S.C. § 2254 (b) requires that all state remedies on all claims alleged in a section 2254 petition be "exhausted" before a federal court reviews the claims. Rose v. Lundy, 455 U.S. 509 (1982). The cornerstone of the exhaustion requirement is that there are no available state remedies when the section 2254 petition is filed.

All state remedies are certainly unavailable when the federal claims have been "fairly presented" to the highest court of the state. Picard v. Connor, 404 U.S. 270, 275 (1970); Schwartzmiller v. Gardner, 752 F.2d 1341, 1344 (9th Cir. 1984). A claim is "fairly presented" to a state court when the legal basis of the federal constitutional claim is addressed; detailing only the facts around the claim is insufficient. Picard 404 U.S. at 275; Anderson v. Harless, 459 U.S. 4 (1982). A claim is not fairly presented if it is raised in a "procedural context in which its merits will not be considered." Castille v. Peoples, 489 U.S. 346, 351-352 (1989) (claim first raised on petition for discretionary view to state Supreme Court).

Citation to state case law may suffice to fairly present a federal issue. See Peterson v. Lampert, 319 F.3d 1153, 1158 (9th Cir.

6 - ORDER

2003):

> To hold that citation to a state case analyzing a federal constitutional issue is insufficient to alert a state court to the federal nature of a petitioner's claim, when citation of a comparable federal case would be sufficient for that purpose, would be to conclude that the state courts are not genuine partners in the enforcement of federal constitutional law. Such a conclusion is inconsistent with the responsibility and dignity of the state courts in our federal system:
>
>> Upon the State courts, equally with the courts of the Union, rests the obligation to guard, enforce, and protect every right granted or secured by the Constitution of the United States and the laws made in pursuance thereof, whenever those rights are involved in any suit or proceeding before them....
>
> Robb v. Connolly, 111 U.S. 624, 637, 4 S.Ct. 544, 28 L.Ed. 542 (1884); see also Tafflin v. Levitt, 493 U.S. 455, 458, 110 S.Ct. 792, 107 L.Ed.2d 887 (1990) ("[W]e have consistently held that state courts have inherent authority, and are thus presumptively competent, to adjudicate claims arising under the laws of the United States."); Irvin v. Dowd, 359 U.S. 394, 404, 79 S.Ct. 825, 3 L.Ed.2d 900 (1959) (quoting passage from Robb v. Connolly). We therefore join our sister circuits and hold that, for purposes of exhaustion, a citation to a state case analyzing a federal constitutional issue serves the same purpose as a citation to a federal case analyzing such an issue.

Another reason state remedies may be unavailable when a section 2254 petition is filed is that the petitioner has defaulted on a claim in state court. This can be by a failure to comply with a state procedural rule, or by a simple failure to raise the claim. Coleman v. Thompson, 111 S. Ct. 2546, 2557, n.1 (1991); Ylst v. Nunnemaker, 111 S.Ct. 2590 (1991); Harris v. Reed, 489 U.S. 255 (1989). This fulfills the technical requirement of exhaustion as there are no available state remedies, but the petitioner then runs

7 - ORDER

squarely into the obstacle of "procedural default." A procedural default occurs if the petitioner failed to physically exhaust his state remedies by not presenting his claims in state court, and "the court to which petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred." Coleman, 111 S. Ct. at 2557, n.1.

If a petitioner has procedurally defaulted on a claim in state court, the federal court will not review the claim unless the petitioner shows "cause and prejudice" for the failure to present constitutional issues to the highest state court or demonstrates that failure to consider the claims will result in "a fundamental miscarriage of justice." Wainwright v. Sykes, 433 U.S. 72 (1977); Murray v. Carrier, 477 U.S. 748 (1986); Hughes v. Idaho State Board of Corrections, 800 F.2d 905 (9th Cir. 1986); Coleman v. Thompson, 111 S. Ct. 2546 (1991).

Petitioner concedes he has procedurally defaulted ground one because he did not raise it as a federal due process issue in the state court, but contends that the failure should be excused based on the actual innocense/miscarriage of justice exception.

To be credible, a claim of actual innocence must be based on reliable evidence not presented at trial. Schlup v. Delo, 513 U.S. 298, 324 (1995). Petitioner relies on the results of his polygraph exam in arguing that he is actually innocent. At trial, petitioner made an offer of proof that he had been truthful on the polygraph, but he did not offer the exact questions. The evidence presented in

8 - ORDER

this court demonstrates that the questions bore directly on the elements of the charged offenses, as one would expect.

Petitioner notes that polygraph evidence is not admissible in Oregon, but he argues that courts should revisit the issue of the scientific validity of polygraphs. Even assuming that plaintiff could demonstrate the scientific reliability of the test in question, which he has not, the test results are not enough to demonstrate actual innocence. Petitioner must show that, in light of all the evidence, no reasonable juror would have found him guilty. Id. at 328.

The evidence in this case includes the child's testimony in court and upon a medical exam immediately following the event that a male-petitioner-touched her labial area and put his finger insider her, and that April Egner saw defendant under the child's covers. Petitioner also presents evidence that Egner was intoxicated, that the child recalled that petitioner was not actually under the covers, that there is a possibility of suggestiveness on the mother's part in the child's testimony, that Egner was "hyperactive and belligerent" in the emergency room, that there has been previous abuse of the child, and that there was no evidence of trauma.[2] There were two polygraph tests administered and the examiner found that the first was inconclusive because it was so erratic. Considering all of the

---

[2]The evidence of suggestiveness is vague. The child testified during the competency hearing that her mother "told her not to say about their part." Ex. 103 at p. 9.

9 - ORDER

evidence, a reasonable juror could conclude that defendant was guilty. Accordingly, petitioner fails to meet the actual innocence exception and therefore his procedural default of ground one is not excused.[3]

Ground 2(a) also was not raised in state court, but to the extent a failure to investigate, prepare, and present a defense bears on petitioners remaining claims, the court will consider it.

The state also argues that certain exhibits (affidavits of petitioner's grandmother and the victim's mother) could have been developed during the state court proceedings and were not. The court will nonetheless consider them for purposes of the petition before this court.

B. <u>Deference</u>

The Anti-Terrorism and Effective Death Penalty Act (AEDPA) circumscribes a federal habeas court's review of a state-court decision. Section 2254 provides in part:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—

---

[3] A reasonable juror could find guilt even without the tactical decisions of petitioner's counsel that permitted the state to offer evidence of petitioner's prior rape conviction. The same is true of the defense decision to offer a revenge motive, as discussed below. Even if such a defense had not been offered and rebutted as happened in this case, a reasonable juror still could have found defendant guilty. It should also be noted that petitioner relies on his denial at trial, which may have allowed the previous conviction to come in even absent the "revenge" defense.

10 - ORDER

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

The phrase "clearly established" refers to the holdings, as opposed to the dicta, of the Supreme Court's decisions as of the time of the relevant state court decision. Williams v. Taylor, 529 U.S. 362, 412 (2000). In other words, "clearly established Federal law" under section 2254(d)(1) is the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision. See id., at 413.

A state court decision is "contrary to our clearly established precedent if the state court applies a rule that contradicts the governing law set forth in our cases" or "if the state court confronts a set of facts that are materially indistinguishable from a decision of this Court and nevertheless arrives at a result different from our precedent." Lockyer v. Andrade, 123 S.Ct. 1166, 1173 (2003) (quoting Williams, 529 U.S. at 405-06).

> [U]nder the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." ...The "unreasonable application" clause requires the state court decision to be more than incorrect or erroneous. ...The state court's application of clearly established law must be objectively unreasonable.

Id. at 1174.

11 - ORDER

> It is not enough that a federal habeas court, in its "independent review of the legal question" is left with a "'firm conviction'" that the state court was "'erroneous'" .... We have held precisely the opposite: "Under § 2254(d)(1)'s 'unreasonable application' clause, then, a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." .... Rather, that application must be objectively unreasonable.

Id. at 1174-75.

As noted above, petitioner alleges instances of ineffective assistance of counsel.

To prevail on a claim of ineffective assistance of counsel, petitioner must show both that his attorney's performance fell below an objective standard of reasonableness; and that the performance prejudiced his defense. Strickland v. Washington, 466 U.S. 668, 687 (1984); Chacon v. Wood, 36 F.3d 1459, 1463 (9th Cir. 1994). For errors that were committed during the guilt phase, "the question is whether there is a reasonable probability that, absent the errors, the fact finder would have had a reasonable doubt respecting guilt." Id. at 695. A "reasonable probability" is less than a preponderance of the evidence. See Kyles v. Whitley, 514 U.S. 419, 434-35 (1995); Strickland, 466 U.S. at 693 ("defendant need not show that counsel's deficient conduct more likely than not altered the outcome in the case.") The question is not whether the defendant would more likely than not have received a different verdict but whether he received a fair trial, understood as a trial resulting in a verdict worthy of confidence. See Kyles, 514 U.S. at 434.

There is a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance, or what "might be considered sound trial strategy." Strickland, 466 U.S. at 689. Reasonableness is judged as of the time of counsel's conduct, not in hindsight. Id. at 689-90. The petitioner must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment. The court must then determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance. Id. at 690.

Whether trial counsel is ineffective involves a mixed question of law and fact. See Crandell v. Bunnell, 144 F.3d 1213, 1216 (9th Cir. 1998); Moran v. Godinez, 57 F.3d 690, 699 (9th Cir. 1994).

Although petitioner has procedurally defaulted ground 2(a), a discussion of petitioner's counsel's preparation and investigation and actions during trial is necessary to an understanding of the remaining grounds in petitioner's petition.

During the competency hearing regarding whether the child understood that she must tell the truth the court asked the child if anyone told her what to say. The child responded that her mother did and that "she told me not to say about their part." The mother interjected that she told her tell the truth. Petitioner's counsel did not inquire about what "part" the child was talking about.

During opening statements, counsel suggested that the jury would hear from Dr. Pliskin in that he was a person "who will or will not

13 - ORDER

verify the story." Counsel also suggested a motive on the part of the mother, April Egner, i.e., that she sought to avenge a previous rape[4] by defendant against Andrea Gali (whom defendant was dating at the time) who is a friend of Egner. During the trial it became evident that Egner did not know Gali, causing counsel to abandon the revenge motive.

During trial, defense counsel did not further explore whether the alleged touching occurred with the covers between petitioner and the child rather than skin to skin even though the child testified that petitioner was on top of the covers. However, the child testified that petitioner "just put [his finger] inside me." Counsel did attempt to impeach the child's statement regarding the covers by asking about a prior statement to the police that petitioner was under the covers.

The medical report indicates that the hymen was intact and there was no evidence of trauma and that the mother was "quite hyperactive and somewhat belligerent."

During cross examination of Officer Michael Schulte, the investigating officer who testified as a rebuttal witness, Schulte revealed that petitioner had been offered a polygraph. Defense counsel requested permission to elicit that petitioner agreed to take the test arguing that the jury was left with the inference that he

---

[4] Counsel argued that the rape was consensual, but because the victim was under the age of 16 at the time, the consensual sex resulted in a Rape III conviction.

14 - ORDER

refused. The court denied the request and counsel made an offer of proof indicating that petitioner agreed to take the test and the first test was inconclusive and the second test verified that he was telling the truth. The court did not allow the evidence to be presented. Defense counsel did not move for a mistrial.

Petitioner testified in his own defense indicating that the child kept coming downstairs telling everyone that it was too noisy on the night in question. Petitioner stated that no one was paying attention and he took her upstairs to tuck her in. He testified that while he was sitting on the edge of the bed talking to the child, Egner walked in and asked if petitioner had done anything to her and the child said no. He then stated that Egner asked her if she was lying and before the child answered she told petitioner to go downstairs. At the point, petitioner testified, Egner "flipped out."

Petitioner testified about his criminal background and that he believed he was being framed for the current charges and that prior to the event in question Egner had threatened him that he was going away for along time. Petitioner testified that he was still willing to go to the party at Egner's house after having been threatened. Counsel called petitioner's grandmother and petitioner's father who supported the testimony regarding the threats, but that they did not link the threats to the Gali rape. Andrea Gali testified in rebuttal that she never met Egner.

During closing arguments, defense counsel did not argue the revenge motive based on the Gali rape, but instead attacked the

15 - ORDER

credibility of the child and the completeness of the states case noting that it did not call several witnesses it said it would, including Dr. Pliskin.

With this background in mind, the court examines petitioner's allegations of ineffective assistance.

1. <u>Cross-examination of the child</u>

Petitioner argues that defense counsel should have conducted an extensive cross-examination of the child who was the only witness to the abuse. Petitioner argues that ample information existed, but that counsel failed to prepare and develop the case. Petitioner contends that effective cross-examination would have revealed that the child had limited ability to remember and relate the events. Petitioner specifically notes that at the competency hearing, the child related that she did not know how long a month was, and that she did not remember what happened. Petitioner also notes that there was evidence that the household members had been drinking on the night in question, that Egner was hyperactive and belligerent and that the child had been abused in the past. Petitioner argues that counsel should have defended the case on the theory that Egner over-reacted based on her past failure to protect the child and that Egner unintentionally (and possibly other members of the household and party guests) conveyed that abuse had occurred to the child. Petitioner argues that counsel should have researched and discovered that children are susceptible to suggestion of abuse and conveyed that to the jury.

16 - ORDER

At trial, counsel did attempt to establish that the child had been coached. Ex. 103 at pp. 64-67. Defense counsel explored the possibility that Egner coached the child as to what to say and the child repeatedly said no. Ex. 103 at p. 67 Counsel made an appropriate tactical decision not to focus on the details of the event. Moreover, petitioner presents very little to support his contention that Egner was motivated by her guilt of not protecting the child beyond mere speculation and fails to demonstrate constitutionally deficient representation. The state post-conviction court's rejection of petitioner's claim regarding cross-examination of the child was not unreasonable. To the extent the state court did not fully discuss the decision regarding cross-examination of the child, this court finds there is, nonetheless, constitutionally sufficient representation in that regard.

2. The Medical Evidence

Petitioner argues that counsel failed to challenge the penetration element of the unlawful sexual penetration charge. Petitioner contends that the medical evidence demonstrates that penetration did not occur and provided insight into the fitness of the mother and her possible overreaction to the situation. Moreover, petitioner contends that the child's statement upon examination does not demonstrate penetration, just a touch, but that counsel could have prevented the statement from being admitted as hearsay in any event. Petitioner argues that counsel should have introduced the

17 - ORDER

medical report and likely was unprepared when the state did not call Dr. Pliskin causing him to fail to call the doctor as a witness.

The medical report does not demonstrate a lack of penetration because penetration does not necessarily result in damage to the hymen or other trauma. The report contained the doctor's statement that the child was "quite explicit that for several seconds a male did touch her labial area." Ex. 111. The report also notes that the child "seems vary exacting in her history." Id. Petitioner's contention that the child's statements in the report would have been excluded as hearsay lacks merit because they were made for purposes of medical diagnosis or treatment. See Oregon Evidence Code 803(4). While it is true that the medical report does not explicitly mention penetration, the report combined with the child's testimony in court could have been very damaging to defense that the touching and penetration did not occur. Thus, a tactical decision not to produce the report was not deficient. The same is true for the failure to call Dr. Pliskin. In addition, use of the failure of Dr. Pliskin to testify as a short coming in the prosecution's case is not a constitutionally deficient tactical decision. The state court was not unreasonable in rejecting this alleged ground of ineffective assistance of counsel.

3. Failure to Move for a Mistrial

In response to a question from defense counsel, Officer Schulte stated "we did offer [petitioner] a polygraph ..." The trial court interjected, "Okay. Let's just – do anything else other than that."

Ex. 103 at p. 93. Defense counsel did not seek a mistrial and petitioner contends that such failure constitutes ineffective assistance.

Counsel did request that the court allow evidence that petitioner did accept the offer to take the test. The court denied the request and asked counsel if he wished to move for a mistrial. Ex. 103 at pp. 100-01. A tactical decision to take a chance with the jury rather than start anew, under the circumstances of this case, was not outside the wide range of reasonable professional assistance, or sound trial strategy.[5] Moreover, the issue had been preserved for appeal. While in hindsight it appears that a request for a mistrial would have been reasonable, it cannot be said the failure to do so demonstrates ineffective assistance of counsel and the state post-conviction court was not unreasonable in rejecting this claim.

## CONCLUSION

For the reasons stated above, petitioner Billy Hatch's petition for habeas corpus relief pursuant to 28 U.S.C. § 2254 (#57) is denied and this proceeding is dismissed.

DATED this 25th day of April, 2005.

_Michael R. Hogan_
United States District Judge

---

[5]This of course assumes the trial court would have granted the mistrial motion. There is a strong possibility the motion would have been denied. See State v. Farrar, 309 Or. 132, 164 (1990) (denial of mistrial appropriate where witness briefly mentioned lie detector test in response to question by defense counsel and did not mention results).

19 - ORDER